JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JASON T. BARBEAU
Senior Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

FLORENCE T. NAKAKUNI  #2286
United States Attorney
District of Hawaii

RACHEL S. MORIYAMA  #3802
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile: (808) 541-2958
Email: Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| | **Civil Action No.** |
| **v.** | |
| | |
| **TRI-MARINE MANAGEMENT CO. LLC,** | **COMPLAINT** |
| **TRI-MARINE FISHING MANAGEMENT LLC,** | |
| **and CAPE MENDOCINO FISHING LP,** | |
| **Defendants.** | |

1

## COMPLAINT

Plaintiff, the United States of America, by the authority of the Attorney General of the United States, acting at the request of the United States Coast Guard, files this Complaint and alleges the following:

## NATURE OF THE ACTION

1.      This is a civil action brought by the United States against Tri-Marine Management Company LLC, Tri-Marine Fishing Management LLC, and Cape Mendocino Fishing LP ("Defendants"), seeking civil penalties and injunctive relief for violations of Section 311 of the Clean Water Act ("CWA" or the "Act"), 33 U.S.C. § 1321.  The Complaint addresses Defendants' October 2014 discharge of harmful quantities of marine diesel fuel oil from Defendants' commercial fishing vessel, the *Capt. Vincent Gann*, into Pago Pago Harbor in American Samoa and Defendants' related violations of the Coast Guard's spill prevention regulations issued under Section 311(j) of the Act.

## JURISDICTION, AUTHORITY, AND VENUE

2.      This Court has jurisdiction over this matter pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1331, 1345, and 1355.

3.      Authority to bring this action is vested in the United States Department of Justice by, *inter alia*, 28 U.S.C. §§ 516 and 519.

4.      Venue is proper in this District pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1391 and 1395(a), because the oil spill occurred in American Samoa and Defendants reside and do business in American Samoa and Hawaii.

## DEFENDANTS

5.      Defendant Tri-Marine Management Company is a Delaware corporation with its headquarters in Bellevue, Washington.  Tri-Marine is involved in the commercial fishing, production, and sale of tuna worldwide.  Tri-Marine operates or is in charge of, *inter alia*, a fleet of fishing vessels based in American Samoa, including the U.S.-flagged *Capt. Vincent Gann* (O.N. 953794).  The keel of the *Capt. Vincent Gann* was laid in 1989.  The vessel measures approximately 230 feet long and is approximately 1,930 gross tons.

6.      Defendant Tri-Marine Fishing Management LLC is an affiliate of Tri-Marine Management Company and operates or is in charge of, *inter alia*, a fleet of fishing vessels based in American Samoa, including the *Capt. Vincent Gann.*

7.      Defendant Cape Mendocino Fishing LP is an affiliate of Tri-Marine Management Company and owns the *Capt. Vincent Gann.*

8.      At all times relevant to this action, Defendants were the owner, operator, or person in charge of the *Capt. Vincent Gann*.

## FACTS

9.      The oil spill occurred on October 16, 2014, in Pago Pago Harbor, which is the primary port in American Samoa.

10.     After the *Capt. Vincent Gann* returned to Pago Pago from a two-month tuna fishing voyage in the South Pacific and unloaded its fish catch, the vessel was maneuvering in Pago Pago Harbor to shift moorings on October 16, 2014.  While making the maneuvers, the vessel hit the moored fishing vessels *Ocean Conquest* and *Ocean Challenger*.

11.     The hull of the *Capt. Vincent Gann* was breached near the front of the vessel during the crash, and at least 35 barrels of the fuel oil that had been illegally stored in the bulbous bow flowed out of a large gash directly into the water.

12.     Crew members used materials on hand to try to stop the flow of oil and absorbent pads to try to remove oil from the water.

13.     The Coast Guard and a spill response company responded to the spill, and cleanup operations continued under the supervision of the Coast Guard.

14.     The Coast Guard had to limit vessel traffic in and out of the harbor for two days due to the oil spill.

15.     The Coast Guard investigated the spill and reportable serious marine incident and identified several violations of spill prevention regulations.  The Coast Guard found that fuel oil was stored in the bulbous bow of the vessel, which is forward of the collision bulkhead.  Such conduct is expressly forbidden under longstanding Coast Guard spill prevention regulations.

16.     Defendants stored extra fuel in the bulbous bow for profit-driven motives: to allow the vessel to remain at sea longer to increase the ship's range and the amount of fish caught on each voyage.

17.     On or about August 14, 2014, before departing Pago Pago, extra fuel oil was loaded into the starboard and port No. 8 fish holds of the vessel.

18.     The extra fuel was loaded into the vessel using an illegal and dangerous method of pumping fuel with hoses over the top of the deck into open fish holds for later transfer to the bulbous bow or fuel tanks once the fish holds were needed for the catch.

19.     During the voyage, on or about September 1, 2014, fuel oil was transferred from the fish holds to the bulbous bow to make room for storing the catch.

20.     The vessel's bilge piping system has been configured to tie into the fuel piping system.

21.     No oil would have spilled into Pago Pago Harbor during the crash but for the illegal storage of fuel oil in the prohibited forward location.

22.     On information and belief, one or more of Defendants' other fishing vessels in their American Samoa fleet are conducting or have conducted the same illegal fuel oil transfer and storage practices as described herein.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties and Injunctive Relief for Violation of CWA Section 311(b)(3)
33 U.S.C. § 1321(b)(3) – Oil Spill**

23.     The preceding paragraphs are incorporated herein.

24.     Section 311(b)(3) of the CWA prohibits the discharge of oil or hazardous substances in "such quantities as may be harmful" into or upon the navigable waters of the United States or adjoining shorelines.  33 U.S.C. § 1321(b)(3).

25.     Pursuant to Section 311(b)(7)(A) of the CWA, "[a]ny person who is the owner, operator, or person in charge of any vessel . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ."  33 U.S.C. § 1321(b)(7)(A).

26.     Civil penalties will be increased pursuant to Section 311(b)(7)(D) of the CWA if the violation results from "gross negligence or willful misconduct."  33 U.S.C. § 1321(b)(7)(D).

27.     Defendants are each a "person" within the meaning of Section 311(a)(7) of the CWA.  33 U.S.C. § 1321(a)(7).

28.     Defendants are the owner, operator, and person in charge of the vessel from which oil was discharged within the meaning of Section 311(a)(6) of the CWA.  33 U.S.C. § 1321(a)(6).

29.     The *Capt. Vincent Gann* is a "vessel" within the meaning of Section 311(a)(3) of the CWA.  33 U.S.C. § 1321(a)(3).

30.     The spilling of oil from Defendants' vessel constitutes a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA.  33 U.S.C. § 1321(a)(2).  For the purposes of Section 311(a)(2) of the CWA, "discharge" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ," subject to certain specified exceptions not applicable here.  33 U.S.C. § 1321(a)(2).

31.     The discharge was of "oil" within the meaning of Section 311(a)(1) of the CWA. 33 U.S.C. § 1321(a)(1).

32.     The discharge of oil was into or upon the navigable waters of the United States within the meaning of Section 311(b)(3) of the CWA.  Pago Pago Harbor is a navigable water. The "United States" is defined in Section 311 to include "American Samoa."  33 U.S.C. § 1321(a)(5).

33.     The oil discharge was in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3. Congress directed the President to determine by regulation "those quantities of oil and any hazardous substance the discharge of which may be harmful to public health or welfare or the environment of the United States."  33 U.S.C. § 1321(b)(4).  The President delegated authority to the Administrator of the Environmental Protection Agency under CWA § 311(b)(3) and (b)(4) for determining quantities of oil the discharge of which may be harmful.  Exec. Order No. 12777,

Section 8(a), 56 Fed. Reg. 54757, 54768 (1991). The EPA determined that discharges of oil that "violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines" are, for purposes of Section 311(b)(4) of the CWA, discharges of oil in such quantities that may be harmful to the public health or welfare or the environment of the United States. 40 C.F.R. § 110.3.

34.     Defendants' oil discharge is a violation of Section 311(b)(3) of the CWA. 33 U.S.C. § 1321(b)(3).

35.     This oil spill resulted from Defendants' willful misconduct or gross negligence.

36.     Defendants are each liable for civil penalties of up to $2,100 per barrel discharged under CWA Section 311(b)(7)(A), or under Section 311(b)(7)(D) if it is proved that the violations are the result of gross negligence or willful misconduct, a minimum of $150,000 and up to $5,300 per barrel discharged. *See* 40 C.F.R. § 19.4 (listing these updated penalty rates for violations that occur after December 6, 2013, as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996).

37.     In addition to civil penalties, the United States seeks injunctive relief to prevent future injuries or discharges of oil from the *Capt. Vincent Gann*. Section 311(e) of the CWA authorizes the Coast Guard to address "imminent and substantial threat[s] to the public health or welfare of the United States . . . because of an actual or threatened discharge of oil or a hazardous substance from a vessel or facility in violation of subsection (b)." 33 U.S.C. § 1321(e).

38.     Section 311(e)(1)(A) of the Act authorizes the Attorney General to secure "any relief from any person . . . as may be necessary to abate such endangerment."  33 U.S.C. § 1321(e)(1)(A).  District courts have "jurisdiction to grant any relief under this subsection that the public interest and the equities of the case may require."  33 U.S.C. § 1321(e)(2).

39.     Defendants' illegal practices of loading fuel oil from the shore fuel terminal over the top of the deck without fixed connections and storing extra fuel oil in the bulbous bow of their vessels pose an imminent and substantial threat of injury to public health or welfare or another oil spill.

## SECOND CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C)
### 33 U.S.C. § 1321(b)(7)(C) – Oil Storage in a Prohibited Space

40.     The preceding paragraphs are incorporated herein.

41.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $37,500 per day for each violation pursuant to Section 311(b)(7)(C).  33 U.S.C. § 1321(b)(7)(C).  *See also* 40 C.F.R. § 19.4 (listing this inflation-adjusted penalty amount for violations occurring after January 12, 2009).

42.     The Coast Guard has promulgated spill prevention regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 155.470.  Pursuant to 33 C.F.R. § 155.470, "In a ship of 400 gross tons and above . . . the keel of which is laid . . . after July 1, 1982, oil or hazardous materials must not be carried in a forepeak tank or a tank forward of the collision bulkhead."

43.     The *Capt. Vincent Gann* is above 400 gross tons and its keel was laid after July 1, 1982.

44.     The bulbous bow of the vessel where Defendants store extra fuel oil is located forward of the collision bulkhead.

45.     Defendants stored oil in the prohibited space of the bulbous bow of the *Capt. Vincent Gann* in violation of 33 C.F.R. § 155.470.

46.     Oil was stored illegally in the bulbous bow of the vessel for at least 46 days, from at least September 1, 2014, to October 16, 2014.

47.     Defendants are each liable for civil penalties of up to $37,500 per day for each violation under Section 311(b)(7)(C) of the CWA.

## THIRD CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C) 33 U.S.C. § 1321(b)(7)(C) – Failure to Properly Maintain Oil Record Book

48.     The preceding paragraphs are incorporated herein.

49.     Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $37,500 per day for each violation pursuant to Section 311(b)(7)(C).  33 U.S.C. § 1321(b)(7)(C). *See also* 40 C.F.R. § 19.4 (listing this inflation-adjusted penalty amount for violations occurring after January 12, 2009).

50.     The Coast Guard has promulgated spill prevention regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 151.25.  Pursuant to 33 C.F.R. § 151.25, an Oil Record Book is required to be properly maintained on the *Capt. Vincent Gann*.

51.     On or about September 1, 2014, fuel oil was removed from the starboard and port No. 8 fish holds on the *Capt. Vincent Gann* and oily wastes and cleaning residue were transferred to the engine room bilge.

52. Neither of those oily waste transfers from the two fish holds to the engine room bilge was recorded in the Defendants' Oil Record Book.

53. Defendants failed to properly maintain the vessel's Oil Record Book on at least two occasions during the voyage in violation of 33 C.F.R. § 151.25.

54. Defendants are each liable for civil penalties of up to $37,500 per day for each violation under Section 311(b)(7)(C) of the CWA.

## FOURTH CAUSE OF ACTION

### Civil Penalties for Regulatory Violations under CWA Section 311(b)(7)(C) 33 U.S.C. § 1321(b)(7)(C) – Fuel Oil Loading Without a Fixed Connection

55. The preceding paragraphs are incorporated herein.

56. Any person who fails or refuses to comply with any regulation issued under Section 311(j) of the CWA, 33 U.S.C. § 1321(j), shall be subject to a civil penalty of up to $37,500 per day for each violation pursuant to Section 311(b)(7)(C). 33 U.S.C. § 1321(b)(7)(C). *See also* 40 C.F.R. § 19.4 (listing this inflation-adjusted penalty amount for violations occurring after January 12, 2009).

57. The Coast Guard has promulgated spill prevention regulations under the authority of Section 311(j) of the CWA, including 33 C.F.R. § 156.120. Pursuant to 33 C.F.R. § 156.120, and setting aside exceptions that do not apply, "No person shall conduct an oil or hazardous material transfer operation unless: . . . (g) The transfer system is attached to a fixed connection on the vessel and the facility . . . ."

58. On August 14, 2014, before departing Pago Pago, Defendants loaded fuel oil into the fuel tanks of the *Capt. Vincent Gann*. In addition, Defendants loaded fuel oil into the starboard and port No. 8 fish holds without fixed connections on the vessel.

59.     These "over-the-top" loadings of fuel oil using portable hoses into open fish holds without fixed connections are dangerous and expressly prohibited under the Coast Guard's spill prevention regulations.

60.     Defendants failed to comply with the requirements for safe fuel oil transfers from the shore facility in Pago Pago into the port and starboard No. 8 fish holds on the *Capt. Vincent Gann* in violation of 33 C.F.R. § 156.120(g).

61.     Defendants are each liable for civil penalties of up to $37,500 per day for each violation under Section 311(b)(7)(C) of the CWA.

## REQUEST FOR RELIEF

WHEREFORE, The United States respectfully requests that this Court:

A.      Assess civil penalties against each Defendant for the oil spill violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), in the amount of up to $2,100 per barrel discharged under CWA Section 311(b)(7)(A) or, if it is proved that the violations are the result of gross negligence or willful misconduct, in the amount of at least $150,000 and up to $5,300 per barrel discharged under Section 311(b)(7)(D);

B.      Assess civil penalties against each Defendant of up to $37,500 per day for each violation of the Coast Guard's spill prevention regulations promulgated pursuant to CWA Section 311(j), as authorized under Section 311(b)(7)(C);

C.      Enjoin Defendants from continuing their illegal fuel oil transfer and storage practices and order Defendants to perform other appropriate injunctive relief to prevent future oil discharges or related violations;

D.      Order Defendants to take all steps necessary to redress or mitigate the impacts of their violations; and

E.   Award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


JASON T. BARBEAU
Senior Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov


FLORENCE T. NAKAKUNI  #2286
United States Attorney
District of Hawaii


RACHEL S. MORIYAMA  #3802
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile: (808) 541-2958
Email: Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Of Counsel:

LCDR Angela Cook
Office of Maritime and International Law, Prevention Law Division
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213
Office:  202-372-3787
e-mail: Angela.A.Cook@uscg.mil


LCDR Christopher L. Jones
Office of Claims and Litigation
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213
Office: (202) 372-3736
e-mail: Christopher.L.Jones@uscg.mil