JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

JASON T. BARBEAU
Senior Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

FLORENCE T. NAKAKUNI  #2286
United States Attorney
District of Hawaii

RACHEL S. MORIYAMA  #3802
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone:  (808) 541-2850
Facsimile: (808) 541-2958
Email: Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action No. 1:15-cv-0454 JMS-RLP |
|     v. | ) | |
| | ) | |
| TRI-MARINE MANAGEMENT CO. LLC, | ) | CONSENT DECREE |
| TRI-MARINE FISHING MANAGEMENT LLC, | ) | |
| and CAPE MENDOCINO FISHING LP, | ) | |
|     Defendants. | ) | |

## CONSENT DECREE

Plaintiff, the United States of America, on behalf of the United States Coast Guard, filed a Complaint against Tri-Marine Management Company LLC, Tri-Marine Fishing Management LLC, and Cape Mendocino Fishing LP ("Defendants") contemporaneously with the lodging of this Consent Decree. The Complaint alleges that Defendants are civilly liable for violations of Section 311 of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1321. The Complaint addresses the October 2014 discharge of harmful quantities of marine diesel fuel oil from the commercial fishing vessel, the *Capt. Vincent Gann* ("Vessel"), into Pago Pago Harbor in American Samoa and related violations of the Coast Guard's spill prevention regulations. The United States seeks civil penalties and injunctive relief for these alleged violations.

Defendants deny the allegations in the Complaint and deny liability. Only for purposes of this action, Defendants admit that this Court has jurisdiction as to Defendants and as to this action. Defendants represent that they are committed to working with the United States Coast Guard and other representatives of the U.S. tuna fleet based in Pago Pago, American Samoa, to ensure compliance with oil spill prevention and maritime safety regulations.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid continued litigation between the Parties on the claims addressed in the Consent Decree, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before taking testimony and without adjudication or admission of any issue of fact or law, or liability, except as provided above and in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to Section 311(b)(7)(E), (e), and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E), (e), and (n), and 28 U.S.C. §§ 1331, 1345, and 1355.  The Court has personal jurisdiction over the Parties to this Consent Decree.  Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1395 because the claims arose in American Samoa and at least Defendants Cape Mendocino Fishing LP and Tri-Marine Fishing Management LLC do business in American Samoa and Hawaii.

2.      For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree or such action and over Defendants and consent to venue in this judicial district.

## II.      APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendants and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Vessel shall relieve Defendants of their obligation to ensure that the requirements of the Consent Decree are implemented.

5.      In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.      DEFINITIONS

6.      Terms used in this Consent Decree that are defined in the CWA, or in regulations promulgated thereunder, shall have the meanings assigned to them in the Act or such regulations,

3

unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this

Consent Decree, the following definitions shall apply:

      a.      "Coast Guard" shall mean the United States Coast Guard.

      b.      "Complaint" shall mean the complaint filed by the United States in this

action.

      c.      "Consent Decree" or "Decree" shall mean this document.

      d.      "Day" shall mean a calendar day unless expressly stated to be a working

day.  In computing any period of time under this Consent Decree, the rules set forth in Rule 6(a)

of the Federal Rules of Civil Procedure shall be followed.

      e.      "Defendants" shall mean Tri-Marine Management Co. LLC, Tri-Marine

Fishing Management LLC, and Cape Mendocino Fishing LP.

      f.      "Discharge" shall mean the fuel oil discharge commencing on October 16,

2014, from the fishing vessel *Capt. Vincent Gann* into Pago Pago Harbor, American Samoa.

      g.      "Effective Date" shall have the definition provided in Section XII.

      h.      "Paragraph" shall mean a portion of this Decree identified by an Arabic

numeral.

      i.      "Parties" shall mean the United States, on behalf of the Coast Guard, and

Defendants Tri-Marine Management Co. LLC, Tri-Marine Fishing Management LLC, and Cape

Mendocino Fishing LP.

      j.      "Plaintiff" shall mean the United States.

      k.      "Section" shall mean a portion of this Decree identified by a Roman

numeral.

l.      "United States" shall mean the United States of America.

## IV.    CIVIL PENALTIES

7.      Defendants shall pay to the United States the total sum of one million fifty

thousand dollars ($1,050,000.00), plus interest, as a civil penalty.  This penalty amount includes

$176,225.00 attributed to the oil spill violation alleged in Count One of the Complaint.  Interest

shall accrue from the date on which this Decree is lodged with the Court, at the rate specified in

28 U.S.C. § 1961, as of the date of lodging.  Defendants assume joint and several liability for the

penalty.

8.      Defendants shall pay the penalty within 30 Days of the Effective Date of the

Consent Decree, or they may pay in up to three installments over a period of nine months.  If

Defendants elect to make payment in installments, Defendants shall pay the first installment in

the amount of three hundred fifty thousand dollars ($350,000.00), plus interest, within 30 Days

of the Effective Date of this Decree.  Defendants shall pay the second installment in the amount

of three hundred fifty thousand dollars ($350,000), plus interest, within 150 Days of the Effective

Date of this Decree.  Defendants shall pay the third installment in the amount of three hundred

fifty thousand dollars ($350,000.00), plus interest, within 270 days of the Effective Date of this

Decree.  Defendants may elect to make payments in advance of this installment schedule but

shall not make any penalty payment before the Effective Date.

9.      Defendants shall pay the civil penalty due by FedWire Electronic Funds Transfer

("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided

to Defendants, after the Effective Date, by the Financial Litigation Unit ("FLU") of the United

States Attorney's Office for the District of Hawaii.  Such monies are to be deposited in the Oil

Spill Liability Trust Fund.  The payment instructions provided by the FLU shall include a

Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify

all payments required to be made in accordance with this Consent Decree.  The FLU will provide

the payment instructions to:

> Renato Curto, for CFH GP LLC, as general partner of Cape Mendocino LP
> 10500 N.E. 8th Street, Suite 1888
> Bellevue, WA 98004

10.     Defendants' payments shall reference the Civil Action Number assigned to this

case and DOJ Number 90-5-1-1-11245 and shall specify that the payment is made toward CWA

civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C.

§ 1321(s) and 26 U.S.C. § 9509(b)(8).

11.     At the time of payment, Defendants shall send a copy of the EFT authorization

form and the EFT transaction record, together with a transmittal letter, which shall state that the

payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall

reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-11245, to the

United States in accordance with Section XI of this Decree (Notices) and to:

> Stephen C. Ewart
> National Pollution Funds Center
> 4200 Wilson Boulevard, Suite 1000
> Arlington, VA 22203-1804
>
> Chief
> United States Coast Guard
> Office of Claims and Litigation CG-0945
> US Coast Guard Mailstop 7213
> 2703 Martin Luther King Jr. Avenue, SE
> Washington, DC 20593-7213

12.     Defendants shall not deduct the civil penalty paid under this Section in calculating

federal income tax or any state income tax.

## V.      INJUNCTIVE RELIEF

13.      Defendants shall perform the following injunctive relief to help ensure that the oil spill and alleged illegal fuel oil loading, storage, and transfer practices that were discovered by the Coast Guard on the *Capt. Vincent Gann* in October 2014 will not be repeated on that Vessel or any other American Samoa-based fishing vessels managed by Tri-Marine Fishing Management LLC.  The measures in this Section apply to every American Samoa-based vessel managed by Tri-Marine Fishing Management LLC, which currently consists of the *Capt. Vincent Gann*, *Cape Breton*, *Cape Cod*, *Cape Elizabeth III*, *Cape Ferrat*, *Cape Finisterre*, *Cape Ann*, *Cape Horn*, *Cape May*, and *Cape San Lucas*, as well as any additional vessels that become managed by Tri-Marine Fishing Management LLC during the period of performance under this Section.

14.      For the next three years after the Effective Date of this Decree, Defendants' port manager and the captain or master of each vessel shall certify in writing, before departing on each fishing trip, that no oil was loaded onto the vessel without a fixed connection or alternative measures approved by the Coast Guard and that no oil is or will be stored forward of the collision bulkhead during the trip.

15.      For the next three years after the Effective Date of this Decree, Tri-Marine Fishing Management LLC shall submit the certifications described in the preceding Paragraph to the Coast Guard's Marine Safety Detachment office in American Samoa every six months.

16.      Within 30 Days of the Effective Date of this Decree, Tri-Marine Fishing Management LLC shall assign an independent maritime consultant to conduct a comprehensive

review of compliance with Coast Guard regulations and best practices, even if not covered by the regulations, of each vessel.  Such review shall be completed within five months of the Effective Date.  For the next three years after the Effective Date, Tri-Marine Fishing Management LLC shall continue this compliance and best practices monitoring by either the retained consultant or a full time qualified compliance professional employed by Defendants.

17.     Within 30 Days of the Effective Date of this Decree, Defendants shall create or amend each vessel's fuel loading procedures manual to prominently include a statement prohibiting the over-the-top loading of extra fuel without fixed connections or use of alternative measures approved by the Coast Guard and oil storage in prohibited spaces.

18.      Within 30 Days of the Effective Date of this Decree, Tri-Marine Fishing Management LLC shall amend the fuel oil transfer procedures for each vessel to address proper procedures for transfers to and from fish holds, including the cleaning of oily waste, oily wastewater, and other slop material (collectively, "slops") out of fish holds.

19.     Within 60 Days of the Effective Date of this Decree, Tri-Marine Fishing Management LLC shall remove all permanent or temporary piping installed to transfer oil into the bulbous bow or other non-approved spaces of each vessel, shall review and update, as needed, each vessel's Oil Pollution Emergency Plan to ensure that the forepeak tank or other prohibited spaces are not listed as potential oil tanks, and shall certify that all oil piping connecting to prohibited and non-approved spaces have been removed and that the vessels' Oil Pollution Emergency Response Plans have been reviewed and updated as described herein.

20.     Within 60 Days of the Effective Date of this Decree, Tri-Marine Fishing Management LLC shall update all line diagrams for fuel oil transfer procedures and waste stream

management plans to accurately reflect all fuel piping on each vessel.

21.     Within 60 Days of the Effective Date of this Decree, Tri-Marine Fishing Management LLC shall conduct training with master and engineering staff for each vessel on proper record keeping in connection with the Oil Record Book, including recording the cleaning and transfer of slops.

22.     For one year after the Effective Date of this Decree, Defendants shall have all internal oil transfers, including all events connected to storage or transfer of fuel oil in or out of fish holds, and all onboard waste oil retention and processing activities, including cleaning slops, recorded in the Oil Record Book of each vessel.

23.     Within 4 months of the Effective Date of this Decree, and again 18 months and 36 months after the Effective Date, Tri-Marine Fishing Management LLC shall submit a written report to the Coast Guard and the Department of Justice, in accordance with Section XI of this Decree (Notices), regarding the progress on and compliance with the requirements on this Section, including a list of vessels added or removed from the fleet during the reporting period and the status of the independent maritime consultant's comprehensive review in Paragraph 16.

24.     Within five months of the Effective Date of this Decree, and again 18 months and 36 months after the Effective Date, Defendants shall have an independent, third-party auditor conduct an audit of the vessels and the actions required in this Section to assess the level of compliance with this Decree and the Coast Guard's oil spill prevention regulations.  The third-party auditor under this Paragraph may be the same individual or firm as the independent maritime consultant retained pursuant to Paragraph 16.  The auditor shall prepare a written report for each audit.  The audit shall include, among other things, identification by location, size, and

purpose of all permanent or temporary piping not originally approved; and an assessment of whether design, piping, and valve arrangements connected to each vessel's bilge, fuel oil, and ballasting systems are in accordance with current IMO/USCG standards and requirements or, if allowed, in compliance with the originally approved plan review diagram.  Defendants shall have the auditor provide a copy of the auditor's reports directly to the Coast Guard and the Department of Justice in accordance with the Section XI of this Decree (Notices).

25.     Each report or certification submitted by any Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

26.     The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

27.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VI.     STIPULATED PENALTIES

28.     Defendants shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VII (Force

Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

29.     If Defendants fail to pay the civil penalty and interest required under Section IV (Civil Penalties) when due, Defendants shall pay to the United States a stipulated penalty of twenty-five hundred dollars ($2,500) per Day for each Day for each payment that is late.

30.     If Defendants fail to perform any part of the injunctive relief required under Section V (Injunctive Relief) when due, Defendants shall pay to the United States a stipulated penalty as follows:

    a.     1st to 30th day: $1,000 penalty per day;

    b.     31st to 60th day: $2,500 penalty per day; and

    c.     More than 60 days: $5,000 penalty per day.

31.     Late payment of a civil penalty and payment of any stipulated penalties shall be made in accordance with payment instructions in Section IV above.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree, for delayed performance of injunctive relief required under this Consent Decree, or for stipulated penalties for late payment of a civil penalty, as applicable.

32.     For all payments of stipulated penalties to the United States, Defendants shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-11245 and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury.

33.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due and shall continue to accrue until performance is satisfactorily completed. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

34.     Defendants shall pay any stipulated penalty within thirty (30) Days of receiving a written demand from the United States.

35.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

36.     Stipulated penalties shall continue to accrue as provided in Paragraph 33 during any Dispute Resolution under Section VIII, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of the United States' decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.      If any Party appeals the District Court's decision, Defendants shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

37.     Defendants shall not deduct stipulated penalties paid under this Section in calculating federal income tax or any state income tax.

12

38.     If Defendants fail to pay stipulated penalties according to the terms of this

Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in

28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall

be construed to limit the United States from seeking any remedy otherwise provided by law for

Defendants' failure to pay any stipulated penalties.

39.     Subject to the provisions of Section IX of this Consent Decree (Effect of

Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree

shall be in addition to any other rights, remedies, or sanctions available to the United States for

Defendants' violation of this Consent Decree or applicable law.

## VII.    FORCE MAJEURE

40.     "Force Majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or

of Defendants' contractors, that delays or prevents the performance of any obligation under this

Consent Decree despite Defendants' best efforts to fulfill the obligation.  The requirement that

Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate

any potential Force Majeure event and best efforts to address the effects of any potential Force

Majeure event (a) as it is occurring and (b) following the potential force majeure, such that the

delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include

Defendants' financial inability to perform any obligation under this Consent Decree.

41.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a Force Majeure event,

Defendants shall provide notice orally or by electronic or facsimile transmission to the Coast

Guard within five (5) Days of when Defendants first knew that the event might cause a delay.

Within ten (10) Days thereafter, Defendants shall provide in writing to the United States, in

accordance with Section XI (Notices), an explanation and description of the reasons for the

delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or

minimize the delay; a schedule for implementation of any measures to be taken to prevent or

mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a

Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the

opinion of Defendants, such event may cause or contribute to an endangerment to public health,

welfare or the environment.  Defendants shall include with any notice all available

documentation supporting the claim that the delay was attributable to a Force Majeure.  Failure to

comply with the above requirements shall preclude Defendants from asserting any claim of Force

Majeure for that event for the period of time of such failure to comply, and for any additional

delay caused by such failure.  Defendants shall be deemed to know of any circumstance of which

Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have

known.

      42.     If the United States agrees that the delay or anticipated delay is attributable to a

Force Majeure event, the time for performance of the obligations under this Consent Decree that

are affected by the Force Majeure event will be extended by the United States, for such time as is

necessary to complete those obligations.  An extension of the time for performance of the

obligations affected by the Force Majeure event shall not, of itself, extend the time for

performance of any other obligation.  The United States will notify Defendants in writing of the

length of the extension, if any, for performance of the obligations affected by the Force Majeure

14

event.

43.     If the United States does not agree that the delay or anticipated delay has been or

will be caused by a Force Majeure event, the United States will notify Defendants in writing of

its decision.

44.     If Defendants elect to invoke the dispute resolution procedures set forth in

Section VIII (Dispute Resolution) in response to the United States' determination in Paragraph

43, it shall do so no later than thirty (30) Days after receipt of the United States' notice.  In any

such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the

evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event,

that the duration of the delay or the extension sought was or will be warranted under the

circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and

that Defendants complied with the requirements of this Section.  If Defendants carry this burden,

the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation

of this Consent Decree identified to the United States and the Court.

## VIII.   DISPUTE RESOLUTION

45.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  Defendants' failure to seek resolution of a dispute

under this Section shall preclude Defendants from raising any such issue as a defense to an action

by the United States to enforce any obligation of Defendants arising under this Decree.

46.     <u>Informal Dispute Resolution</u>.  Any dispute subject to Dispute Resolution under

this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

15

considered to have arisen when Defendants send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within twenty (20) Days after the conclusion of the informal negotiation period, Defendants invokes formal dispute resolution procedures as set forth below.

47.     <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendants' position and any supporting documentation relied upon by Defendants.

48.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Defendants' Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

49.     Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XI (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall

16

contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

50.     The United States shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

51.     Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 47, Defendants shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

52.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 36.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI (Stipulated Penalties).

## IX.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

53.     This Consent Decree resolves the civil penalty and injunctive relief claims of the United States for (a) the causes of action alleged in the Complaint through the date of lodging and (b) as to the other vessels in Defendants' American Samoa-based fleet identified in Paragraph 13, the same type of violations as alleged in Counts Two through Four of the

Complaint up to the date of lodging.

54.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 53.

55.     The United States reserves all legal and equitable claims for, including but not limited to, injunctive relief, civil penalties, response and removal costs, expenses, damages including natural resource damages, criminal liability, and other appropriate relief, except as expressly stated in Paragraph 53.  This Consent Decree shall not be construed to limit the rights of the United States to obtain additional relief under any federal or state law, implementing regulations of federal or state law, or permit conditions, except as expressly specified in this Consent Decree.

56.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, cost recovery, criminal liability, or other appropriate relief relating to the Defendants' vessels or facilities, Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to the claims that have been specifically resolved pursuant to Paragraph 53 of this Section.

57.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, orders, and permits.  Defendants' compliance with this Consent Decree shall be no defense to

18

any action commenced pursuant to said laws, regulations, orders, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendants' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, state, or local laws, regulations, orders, or permits.

58.     This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties that are not party to this Consent Decree, nor does it limit the rights of third parties that are not party to this Consent Decree against Defendants, except as otherwise provided by law, including but not limited to 33 U.S.C. § 1365(b)(1)(B) and 42 U.S.C. § 7604(b)(1)(B).  This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not a party to this Consent Decree.

59.     Defendants hereby covenant not to sue and agree not to assert any claims related to the Discharge, or response activities in connection with the Discharge, against the United States pursuant to the CWA, Oil Pollution Act ("OPA"), or any other state or federal law or regulation for acts or omissions through the date of lodging of the Consent Decree.  Defendants further covenant not to sue and agree not to assert any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund or pursuant to any other provision of law.

## X.     COSTS

60.     The Parties shall bear their own costs related to this Action and this Consent Decree, including attorneys' fees, except that the United States shall be entitled to collect costs (including attorneys' fees) incurred in any action necessary to enforce this Consent Decree.

## XI.    NOTICES

61.    Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed to all parties as follows:

As to the United States:

To the U.S. Department of Justice:

Chief (re: DJ # 90-5-1-1-11245)
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
(202) 514-0097 (facsimile)

To Coast Guard:

Mr. Brian Judge
Chief, Office of Claims and Litigation
United States Coast Guard
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213
e-mail:  Brian.Judge@uscg.mil

Senior Investigating Officer
Coast Guard Sector Honolulu, Prevention Division
433 Ala Moana Blvd
Honolulu, HI. 96813
808-532-8158 (facsimile)

As to Defendants:

Renato Curto, for CFH GP LLC, as general partner of Cape Mendocino LP
10500 N.E. 8th Street, Suite 1888
Bellevue, WA 98004

62.     Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

63.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XII.     EFFECTIVE DATE

64.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIII.     RETENTION OF JURISDICTION/TERMINATION

65.     The Court shall retain jurisdiction over this case until termination of this Consent Decree for the purpose of effectuating or enforcing compliance with the terms of this Decree.

## XIV.     TERMINATION

66.     After Defendants have complied with the requirements of this Consent Decree, including the injunctive relief in Section V, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendants may serve upon the United States a Request for Termination, stating that Defendants have satisfied those requirements, together with all necessary supporting documentation.

67.     Following receipt by the United States of Defendants' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendants have satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be

21

terminated, the Parties shall submit a joint stipulation terminating the Decree that shall

automatically terminate this Consent Decree as of the date the joint stipulation is filed.  If the

United States does not agree that the Decree may be terminated, Defendants may invoke Dispute

Resolution under Section VII.  However, Defendants shall not seek Dispute Resolution of any

dispute regarding termination until thirty (30) days after service of its Request for Termination.

## XV.    PUBLIC PARTICIPATION

68.    This Consent Decree shall be lodged with the Court for a period of not less than

thirty (30) Days for public notice and comment.  The Parties agree and acknowledge that final

approval by the United States and entry of this Consent Decree is subject to notice of lodging of

the Consent Decree and a public comment period.  The United States reserves the right to

withdraw or withhold consent if the comments disclose facts or considerations which indicate

that the Consent Decree is inappropriate, improper, or inadequate.

69.    Defendants agree not to oppose entry of this Consent Decree by the Court or to

challenge any provision of the Decree, unless the United States has notified the Parties in writing

that it no longer supports entry of the Decree.  Defendants consent to entry of this Consent

Decree without further notice except through the Court's electronic case filing system.

## XVI.    SIGNATORIES/SERVICE

70.    The Assistant Attorney General, Environment and Natural Resources Division,

United States Department of Justice, on behalf of the United States, and the undersigned

representatives of Defendants each certifies that he or she is fully authorized to enter into the

terms and conditions of this Consent Decree and to execute and legally bind the Party he or she

represents to the terms of this Decree.

71.     This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

## XVII.  INTEGRATION

72.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XVIII. FINAL JUDGMENT

73.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendants.

**This Consent Decree is dated and entered this** 10th **day of** December , **2015.**



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

23

Signature Page to Consent Decree in *U.S. v. Tri-Marine Management Co. et al.*

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

Dated: Oct. 28, 2015

JOHN C. CRUDEN
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

Dated: Oct. 28, 2015

JASON T. BARBEAU
Senior Trial Attorney (D.C. Bar No. 468200)
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

24

**Signature Page to Consent Decree in** *U.S. v. Tri-Marine Management Co. et al.*

## FOR PLAINTIFF UNITED STATES OF AMERICA (continued):

Dated: 27 OCT 2015

Brian Judge
Chief, Office of Claims and Litigation
United States Coast Guard
Coast Guard Headquarters
2703 Martin Luther King Jr. Ave. SE
Washington, DC 20593-7213

Dated: 26 OCT 2015

CDR John T. Dewey CDR, USCG
Staff Judge Advocate
Fourteenth Coast Guard District
300 Ala Moana Blvd. #9-130
Honolulu, HI 96850

25

Page to Consent Decree in *U.S. v. Tri-Marine Management Co. et al.*

**FOR DEFENDANTS:**

**TRI-MARINE MANAGEMENT CO. LLC**

Dated: 10/23/2015        By: _____
                              Renato Curto

**TRI-MARINE FISHING MANAGEMENT LLC**

Dated: 10/23/2015        By: _____
                              Renato Curto

**CAPE MENDOCINO FISHING LP**

Dated: 10/23/2015        By: _____
                              Renato Curto

26